IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | |
|---|---|
| Ronnie J. Vanzant, *a/k/a* Ronnie Joe Vanzant, <br><br>　　Plaintiff, <br><br>　　　v. <br><br>Dr. Theodolph H. Jacobs[1]; PA Ms. Huffman[2]; and Ms. Michelle Page, <br><br>　　Defendants.[3] | Case No. 8:14-cv-03725-RBH-JDA <br><br><br><br>**REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE** |

　　This matter is before the Court on Defendants' motion to dismiss or, in the alternative, for summary judgment. [Doc. 109.] Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2)(d), D.S.C., this magistrate judge is authorized to review all pretrial matters in cases filed under 42 U.S.C. § 1983 and to submit findings and recommendations to the District Court.

---

　　[1]Plaintiff misidentified Dr. Theodolph Jacobs as "Jacob." [Doc. 32 at 1.]

　　[2]Plaintiff misidentified PA Ms. Huffman as "Hoffman." [Doc. 32 at 1.]

　　[3]Defendants Carolina Center for Occupational Health, Dr. Berry Weissglass, CCOH Malpractice Insurance Company, City of Charleston, Sheriff Al Cannon, and Charleston County Detention Center were dismissed when their respective dispositive motions were granted on August 25, 2015. [Doc. 116.]

Plaintiff, proceeding pro se, filed this action on September 14, 2014,[4] alleging violations of his constitutional rights pursuant to 42 U.S.C. § 1983.[5] [Doc. 1.] Defendants filed a motion to dismiss or, in the alternative, for summary judgment on August 6, 2015. [Doc. 109.] The same day, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), Plaintiff was advised to respond to the motion and of the possible consequences if he failed to adequately respond. [Doc. 110.] Plaintiff filed a response in opposition on August 24, 2015 [Doc. 114], and Defendants filed a reply on September 2, 2015 [Doc. 119]. Accordingly, the motion is ripe for review.

---

[4] A prisoner's pleading is considered filed at the moment it is delivered to prison authorities for forwarding to the court. *See Houston v. Lack*, 487 U.S. 266, 270 (1988). In this case, construing the filing ate in the light most favorable to Plaintiff, this action was filed on September 14, 2014. [Doc. 1 at 7 (Complaint dated September 14, 2014).]

[5] Plaintiff's Complaint lists the Americans with Disabilities Act ("ADA") as a federal law that Defendants violated. [Doc. 1 at 4.] However, he does not identify any specific provision of the ADA that was allegedly violated, nor does he otherwise allege how any Defendant's conduct violated the ADA. To the extent Plaintiff has alleged a claim under the ADA, such claim should be denied. Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subject to discrimination by such entity." 42 U.S.C. § 12132. In part, a plaintiff seeking relief under the ADA must present sufficient evidence to establish that he has a disability. *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 498 (4th Cir. 2005) (citations omitted). Here, Plaintiff has failed to allege facts to support a finding that he is disabled or that any alleged disability played a role in his treatment; therefore, he has failed to state a claim pursuant to the ADA and any such claim should be dismissed.

Additionally, Plaintiff's Complaint lists the Patient Protection and Affordable Care Act ("PPACA") as a federal law that Defendants violated. [Doc. 1 at 4.] However, he again does not identify any specific provision of the PPACA that was allegedly violated, nor does he otherwise allege how any Defendant's conduct violated the PPACA. Although Plaintiff is proceeding pro se and, thus, his pleadings are entitled to liberal construction as discussed below, "it is not the court's responsibility or obligation to scour the numerous provisions of the PPACA to divine a violation." *Whitney v. Jones*, No. 5:13-cv-347-RS-EMT, 2014 WL 4538063, at *6 (N.D. Fla. Sept. 11, 2014). Accordingly, any claim under the PPACA should be dismissed for failure to state a claim.

2

## BACKGROUND[6]

Plaintiff, who was a pretrial detainee at the Charleston County Detention Center ("CCDC") at all times relevant to the allegations in the Complaint, alleges that one week prior to his incarceration he was injured in a work-related accident near the end of February 2014. [Doc. 1 at 5–7.] Due to the accident, his left knee, lower back, and neck were injured, and he was taken in an ambulance to a hospital where he was X-rayed and given pain medicine. [*Id.*] He has been in pain since his arrival at CCDC, and although he complained of his pain to the officials at the detention center, it took them two months to schedule an MRI for his left knee. [*Id.*] Defendant PS Ms. Huffman ("Huffman") placed the "MRI request . . . for approval by the provider" for Plaintiff's left knee, and Plaintiff had the MRI on May 22, 2014. [*Id.* at 5.] The MRI showed an "undersurface tear of the posterior portion of the medial meniscus of the left knee." [*Id.* at 6.] Plaintiff contends he was called to the medical department where Huffman and Defendant Ms. Michelle Page ("Page") explained to him that Defendant Dr. Theodolph H. Jacobs ("Jacobs") had seen the MRI results and understood that Plaintiff needed surgery to repair his knee and relieve the knee pain. [*Id.*] However, according to Huffman and Page, "the providers (CCOH) and (SACDC) are not going to not only allow the surgery, but pay for such surgery." [*Id.*] Plaintiff then wrote a letter to Barry Weissglass and Sheriff Al Cannon requesting permission for the knee surgery and for someone to pay for it; he has not received a response. [*Id.*] Plaintiff alleges that "[e]ach Defendant is involved because they housed, incarcerated, and detained

---

[6]The facts included in this Background section are taken directly from Plaintiff's Complaint.

plaintiff and thus subjected their selves (sic) as the medical provider and payor (insurance company) to the plaintiff." [*Id.*]

Based on these facts, Plaintiff alleges that Defendants have violated the Constitution by their deliberate indifference to his serious medical needs, the ADA, and the PPACA. [*Id.* at 2, 4–6.] He seeks a jury trial, an order that Defendants be required to provide and pay for Plaintiff's left knee surgery and for treatment for his back and neck injuries, and punitive and monetary damages. [*Id.* at 7.]

## APPLICABLE LAW

**Liberal Construction of Pro Se Complaint**

Plaintiff brought this action pro se, which requires the Court to liberally construe his pleadings. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978); *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). Pro se pleadings are held to a less stringent standard than those drafted by attorneys. *Haines*, 404 U.S. at 520. Even under this less stringent standard, however, the pro se complaint is still subject to summary dismissal. *Id.* at 520–21. The mandated liberal construction means only that if the court can reasonably read the pleadings to state a valid claim on which the petitioner could prevail, it should do so. *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999). A court may not construct the plaintiff's legal arguments for him. *Small v. Endicott*, 998 F.2d 411, 417–18 (7th Cir. 1993). Nor should a court "conjure up questions never squarely presented." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

**Requirements for a Cause of Action Under § 1983**

This action is filed pursuant to 42 U.S.C. § 1983, which provides a private cause of action for constitutional violations by persons acting under color of state law. Section 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). Accordingly, a civil action under § 1983 allows "a party who has been deprived of a federal right under the color of state law to seek relief." *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 707 (1999).

Section 1983 provides, in relevant part,

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or any person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . .

42 U.S.C. § 1983. To establish a claim under § 1983, a plaintiff must prove two elements: (1) that the defendant "deprived [the plaintiff] of a right secured by the Constitution and laws of the United States" and (2) that the defendant "deprived [the plaintiff] of this constitutional right under color of [State] statute, ordinance, regulation, custom, or usage." *Mentavlos v. Anderson*, 249 F.3d 301, 310 (4th Cir. 2001) (third alteration in original) (citation and internal quotation marks omitted).

The under-color-of-state-law element, which is equivalent to the "state action" requirement under the Fourteenth Amendment,

> reflects judicial recognition of the fact that most rights secured by the Constitution are protected only against infringement by governments. This fundamental limitation on the scope of

> constitutional guarantees preserves an area of individual freedom by limiting the reach of federal law and avoids imposing on the State, its agencies or officials, responsibility for conduct for which they cannot fairly be blamed.

*Id.* (quoting *Dowe v. Total Action Against Poverty in Roanoke Valley,* 145 F.3d 653, 658 (4th Cir. 1998)) (internal citations and quotation marks omitted).  Nevertheless, "the deed of an ostensibly private organization or individual" may at times be treated "as if a State has caused it to be performed."  *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001).  Specifically, "state action may be found if, though only if, there is such a 'close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself.'"  *Id.* (quoting *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974)).  State action requires both an alleged constitutional deprivation "caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State . . . or by a person for whom the State is responsible" and that "the party charged with the deprivation [is] a person who may fairly be said to be a state actor."  *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982).  A determination of whether a private party's allegedly unconstitutional conduct is fairly attributable to the State requires the court to "begin[ ] by identifying 'the specific conduct of which the plaintiff complains.'"  *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 51 (1999) (quoting *Blum* v. *Yaretsky,* 457 U.S. 991, 1004 (1982)).

**Motion to Dismiss Standard**

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a motion to dismiss for failure to state a claim should not be granted unless it appears certain that the plaintiff can prove no set of facts which would support her claim and entitle her to relief.  When

considering a motion to dismiss, the court should "accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993).  However, the court "need not accept the legal conclusions drawn from the facts" nor "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Eastern Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000).  Further, for purposes of a Rule 12(b)(6) motion, a court may rely on only the complaint's allegations and those documents attached as exhibits or incorporated by reference. *See Simons v. Montgomery Cnty. Police Officers*, 762 F.2d 30, 31 (4th Cir. 1985).  If matters outside the pleadings are presented to and not excluded by the court, the motion is treated as one for summary judgment under Rule 56 of the Federal Rules of Civil Procedure.  Fed. R. Civ. P. 12(d).

With respect to well-pleaded allegations, the United States Supreme Court explained the interplay between Rule 8(a) and Rule 12(b)(6) in *Bell Atlantic Corp. v. Twombly*:

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

550 U.S. 544, 555 (2007) (footnote and citations omitted); *see also* 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1216, at 235–36 (3d ed. 2004) ("[T]he pleading must contain something more . . . than a bare averment that the pleader wants

7

compensation and is entitled to it or a statement of facts that merely creates a suspicion that the pleader might have a legally cognizable right of action.").

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). The plausibility standard reflects the threshold requirement of Rule 8(a)(2)—the pleader must plead sufficient facts to show he is entitled to relief, not merely facts consistent with the defendant's liability. *Twombly*, 550 U.S. at 557 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Iqbal*, 556 U.S. at 678 ("Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" (quoting *Twombly*, 550 U.S. at 557)). Accordingly, the plausibility standard requires a plaintiff to articulate facts that, when accepted as true, demonstrate that the plaintiff has stated a claim that makes it plausible the plaintiff is entitled to relief. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678). Here, because matters outside the pleadings have been presented to and not excluded by the Court, the Court treats the motion as one for summary judgment.

**Summary Judgment Standard**

Rule 56(c) of the Federal Rules of Civil Procedure states, as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and

> admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(c). Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that (1) there is no genuine issue as to any material fact and (2) he is entitled to judgment as a matter of law. As to the first of these determinations, a fact is "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. When determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson,* 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir.1985). "Only disputes over facts that might affect the outcome of the suit

under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Further, Rule 56(e) provides in pertinent part:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e). Accordingly, when Rule 56(e) has shifted the burden of proof to the non-movant, he must produce existence of every element essential to his action that he bears the burden of adducing at a trial on the merits.

## DISCUSSION

**Deliberate Indifference to Medical Needs**

Because at all relevant times Plaintiff was a pretrial detainee, his claims are evaluated under the Fourteenth Amendment rather than the Eighth Amendment, which is used to evaluate conditions of confinement for those convicted of crimes. *See City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983). Unlike convicted inmates, pretrial detainees have not been adjudicated guilty of a crime and may not be subjected to any form of "punishment." *Martin v. Gentile*, 849 F.2d 863, 870 (4th Cir. 1988). In any event, "[t]he due process rights of a pretrial detainee are at least as great as the [E]ighth [A]mendment protections available to the convicted prisoner." *Martin*, 849 F.2d at 870.

Deliberate indifference to a prisoner's serious medical needs violates the Eighth Amendment and states a cause of action under § 1983 because deliberate indifference

constitutes "the 'unnecessary and wanton infliction of pain.'" *Estelle*, 429 U.S. at 104–05 (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976) (joint opinion of Stewart, Powell, and Stevens, JJ.)). Deliberate indifference exists when prison officials know of a substantial risk to a prisoner's health or safety and consciously disregard that risk. *See Farmer v. Brennan*, 511 U.S. 825, 836 (1994); *Miltier v. Beorn*, 896 F.2d 848, 851–52 (4th Cir. 1990) ("Deliberate indifference may be demonstrated by either actual intent or reckless disregard. A defendant acts recklessly by disregarding a substantial risk of danger that is either known to the defendant or which would be apparent to a reasonable person in the defendant's position." (citation omitted)). Within the United States Court of Appeals for the Fourth Circuit, "the treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness" to violate a prisoner's Eighth Amendment rights. *Miltier*, 896 F.2d at 851.

To prevail on an Eighth Amendment claim, the prisoner must demonstrate (1) his medical condition was a sufficiently serious one[7] and (2) subjectively, the prison officials acted with a sufficiently culpable state of mind, which is satisfied by showing deliberate indifference by the prison officials. *Goodman v. Wexford Health Sources, Inc.*, 425 F. App'x 202, 204 (4th Cir. 2011) (quoting *Johnson v. Quinones*, 145 F.3d 164, 167 (4th Cir. 1998)). As the United States Supreme Court has explained,

---

[7] "A medical need is 'serious' if it is one that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Gaudreault v. Municipality of Salem, Mass.*, 923 F.2d 203, 208 (1st Cir. 1990) (citing *Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3rd Cir. 1987); *Hendrix v. Faulkner*, 525 F. Supp. 435, 454 (N.D. Ind. 1981)).

> Since, we said, only the "'unnecessary *and wanton* infliction of pain'" implicates the Eighth Amendment, a prisoner advancing such a claim must, at a minimum, allege "deliberate indifference" to his "serious" medical needs.  "It is *only* such indifference" that can violate the Eighth Amendment; allegations of "inadvertent failure to provide adequate medical care," or of a "negligent . . . diagnos[is]," simply fail to establish the requisite culpable state of mind.

*Wilson v. Seiter*, 501 U.S. 294, 297 (1991) (emphasis and alteration in original) (citations omitted).  Further, in the context of prisoner medical care, the Constitution requires only that prisoners receive adequate medical care; a prisoner is not guaranteed his choice of treatment.  *Jackson v. Fair*, 846 F.2d 811, 817 (1st Cir. 1988) (citing *Layne v. Vinzant*, 657 F.2d 468, 471 (1st Cir. 1981)); *see Russell v. Sheffer*, 528 F.2d 318, 318 (4th Cir. 1975) (citing *Blanks v. Cunningham*, 409 F.2d 220 (4th Cir.1969); *Hirons v. Director*, 351 F.2d 613 (4th Cir.1965)) ("Prisoners are entitled to reasonable medical care."); *see also, e.g.*, *Barton v. Dorriety*, No. 9:10-cv-1362, 2011 WL 1049510, at *2 (D.S.C. Mar. 21, 2011) (citing *Jackson*, 846 F.2d at 817).  The fact that a prisoner believed he had a more serious injury or that he required better treatment does not establish a constitutional violation.  *See, e.g.*, *Russell*, 528 F.2d at 319.

Here, the evidence reveals Huffman saw Plaintiff on March 11, 2014, with complaints of knee and lower back pain from a job-related accident; he was prescribed Motrin per the chronic pain protocol and referred to clinic for further evaluation. [Doc. 109-6.] On March 17, 2014, Plaintiff was prescribed and assigned a knee brace, and on April 4, 2014, he was assigned a cane. [Doc. 109-7.] Additionally, Defendants referred Plaintiff to the Medical University of South Carolina for a left knee MRI. [Doc. 109-8.] The MRI was performed on May 22, 2014, and the impression was as follows: "Undersurface tear of the

posterior portion of the medial meniscus. Possible free edge fraying of the body of the medial meniscus." [Doc. 109-10.] The MRI report does not recommend surgery [*see id.*], and Jacobs and Huffman have averred that no surgical intervention was recommended [Docs. 109-3 ¶ 6; 109-4 ¶ 7]. Huffman saw Plaintiff again on August 25, 2014, and Plaintiff stated that he wanted his knee fixed by an orthopedic surgeon. [Doc. 109-11.] Huffman and Page explained to Plaintiff that they would treat his pain at CCDC and would refer him to an orthopedic if he was willing to pay for the visit. [*Id.*; Docs. 109-4 ¶ 8; 109-5 ¶ 6.] On October 17, 2014, Jacobs examined Plaintiff and found (a) no corroborating physical signs to support Plaintiff's back pain behavior and (b) that Plaintiff's knee was "quite stable." [Doc. 109-12.] Jacobs ordered that Plaintiff continue taking Motrin but also added Tylenol for pain. [*Id.*]

The evidence does not establish that Defendants knew of a substantial risk to Plaintiff's health and consciously disregarded that risk. Plaintiff was seen by medical staff on numerous occasions,[8] referred for a left knee MRI, prescribed medications for pain,[9] and assigned a knee brace and cane.[10] Plaintiff is clearly disappointed that he has not had

---

[8]As noted by the Honorable R. Bryan Harwell in his Order dated August 25, 2015, the medical records detail more than 75 visits to medical providers while Plaintiff was at CCDC. [Doc. 116 at 9 n.8.]

[9]In his response in opposition to Defendants' motion, Plaintiff argues Defendants refused to acknowledge his back injury that kept Plaintiff in pain. [Doc. 114 at 2.] However, the evidence does not support this assertion. The medical records reference back pain in addition to knee pain [*see, e.g.*, Docs. 109-6; 109-12], and the pain medication prescribed to Plaintiff treated both his back and knee pain.

[10]In his response in opposition to Defendants' motion, Plaintiff agues that Defendants terminated all of Plaintiff's medications, care, and treatment in June 2014 as a punishment for having been caught hoarding medications. [Doc. 114 at 2–4.] He further argues Defendants terminated Plaintiff's mental health and seizure medications. [*Id.* at 4.] These

13

knee surgery; however, such disappointment does not translate to deliberate indifference. As explained above, the Constitution requires only that a prisoner receive adequate medical care; the Constitution does not mandate that a prisoner receive the medical treatment of his choice. *See, e.g., Jackson*, 846 F.2d at 817. Plaintiff has failed to provide any evidence, other than conclusory allegations, that he needed surgery. The medical records reveal that Plaintiff requested surgery but no medical provider determined surgery was necessary. Moreover, Defendants informed Plaintiff that they would refer him to an orthopedic surgeon if he was willing to pay for the visit. Thus, Plaintiff has failed to demonstrate a genuine issue of material fact remains as to whether Defendants acted with deliberate indifference, and Defendants' motion for summary judgment should be granted.

**Qualified Immunity**

Defendants also argue they are entitled to qualified immunity. The Court agrees.

Qualified immunity protects government officials performing discretionary functions from civil damage suits as long as the conduct in question does not "violate clearly established rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Thus, qualified immunity does not protect an official who violates a constitutional or statutory right of a plaintiff that was clearly established at the

---

allegations are not contained in the Complaint, however, and new matters cannot be raised in a response in opposition to a motion for summary judgment, *see Temple v. Oconee Cnty.*, C/A No. 6:13-144-JFA-KFM, 2014 WL 4417702, at *13 (D.S.C. Sept.8, 2014) (citing *White v. Roche Biomedical Labs.*, 807 F.Supp. 1212, 1216 (D.S.C. 1992)). Moreover, Plaintiff has provided nothing more than conclusory allegations, and the record does not support Plaintiff's assertions. As previously stated, Huffman saw Plaintiff on August 25, 2014 [Doc. 109-11], and Jacobs examined Plaintiff on October 17, 2014 [Doc. 109-12]. Additionally, Sheriff Al Cannon previously filed numerous medical records dated from June 2014 through February 2015. [Doc. 71-4 at 6–71-9 at 11 (Plaintiff's medical records, dated from June 13, 2014 through February 25, 2015).]

time of the alleged violation such that an objectively reasonable official in the official's position would have known of the right.  *Id.*  Further, qualified immunity is "an immunity from suit rather than a mere defense to liability."  *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

To determine whether qualified immunity applies, a court must determine "'whether the plaintiff has alleged the deprivation of an actual constitutional right at all[ ] and ... whether that right was clearly established at the time of the alleged violation.'"  *Wilson v. Layne*, 526 U.S. 603, 609 (1999) (quoting *Conn v. Gabbert*, 526 U.S. 286, 290 (1999)).  "[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action[,] assessed in light of the legal rules that were 'clearly established' at the time it was taken."  *Anderson v. Creighton*, 483 U.S. 635, 639 (1987) (citing *Harlow*, 457 U.S. at 819).  For purposes of this analysis, a right is "clearly established" if "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right."  *Id.* at 640.

District court and court of appeals judges are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."  *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).  If a court decides in the negative the first prong it considers—i.e., the court decides the plaintiff has not alleged the deprivation of an actual constitutional right or the right was not clearly established at the time of the alleged violation—the court need not consider the other prong of the qualified immunity analysis.  *See id.* at 243–45; *Torchinsky v. Siwinski*, 942 F.2d 257, 260 (4th Cir. 1991) (holding the

court "need not formally resolve" the constitutional question of "whether the [plaintiffs] were arrested without probable cause" to address the plaintiffs' § 1983 claim; the court stated that it "need only determine whether [the defendant]—a deputy sheriff performing within the normal course of his employment—acted with the objective reasonableness necessary to entitle him to qualified immunity").

As discussed above, Plaintiff's allegations fail to demonstrate Defendants violated Plaintiff's constitutional rights. Therefore, Defendants are entitled to qualified immunity.

## **CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, the Court recommends that Defendants' motion for summary judgment be GRANTED.

IT IS SO RECOMMENDED.

s/Jacquelyn D. Austin<br>
United States Magistrate Judge

January 19, 2016
Greenville, South Carolina